# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF TEXAS

# AUSTIN DIVISION

| | | |
|---|---|---|
| **WESLEY B. MAYES #1274331** | § | |
| | § | |
| **V.** | § | **A-06-CA-163-SS** |
| | § | |
| **UNIVERSITY OF TEXAS MEDICAL** | § | |
| **BRANCH, TEXAS DEPARTMENT** | § | |
| **OF CRIMINAL JUSTICE,** | § | |
| **MISS ISSAC,**[1] **DR. L. LINTHICUM,** | § | |
| **WARDEN VERNON K. PITTMAN,** | § | |
| **REGIONAL DIRECTOR GILBERT** | § | |
| **CAMPUZANO, AND SUPERVISOR** | § | |
| **OWEN J. MURRAY** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE SAM SPARKS
      UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges, as amended, effective December 1, 2002.

Before the Court are Plaintiff's complaint brought pursuant to 42 U.S.C. § 1983 (Document No. 1); Plaintiff's Memorandum in Support (Document No. 2); Plaintiff's affidavit (Document

---

[1] Defendants indicate the correct spelling of this defendant's name is Issak. The Report and Recommendation will refer to Defendant Issak by the correct spelling.

1

No. 20); the affidavit of Inmate Reginald Sampay (Document No. 22); Plaintiff's exhibits (Document No. 27); the Motion for Summary Judgment filed by Defendants Dorothy Anne Issak, Lannette Linthicum, Vernon Pittman, Gilbert Campuzano and Owen J. Murray (Document No. 43); and Plaintiff's response thereto (Document No. 46). Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

## I. BACKGROUND

At the time he filed his complaint, Plaintiff was an inmate incarcerated in the Travis State Jail of the Texas Department of Criminal Justice - Correctional Institutions Division. Plaintiff was subsequently transferred to the Dalhart Unit. Plaintiff files this action pursuant to 42 U.S.C. § 1983 alleging he was denied his arthritis/pain medication, pursuant to prison policy, while the Travis State Jail was on lockdown. According to Plaintiff, his medication is considered non-mandatory and is not dispensed during prison lockdowns. Plaintiff does not make clear in his complaint the dates he was not provided medication. However, he indicates he suffered pain during these periods. Plaintiff sues the University of Texas Medical Branch, the Texas Department of Criminal Justice, Supervisor Issak, Dr. L. Linthicum, Warden Vernon K. Pittman, Regional Director Gilbert Campuzano, and Supervisor Owen J. Murray. He seeks $250,000 in damages.

After filing his complaint, Plaintiff provided the Court with the affidavit of Inmate Reginald Sampay. Sampay attests Plaintiff was not given his medication from December 19, 2005 through December 24, 2005. Plaintiff also provided the Court with his own affidavit in which he states the nurses told him his medication was non-mandatory and would not be passed out during lockdown. A month later he clarified the unit was on lockdown in March 2005, June 2005 and December 19, 2005 until December 24, 2005. Plaintiff does not indicate whether the prison was on lockdown the

entire months of March and June or whether the prison was on lockdown for brief periods during those months.

Defendants Issak, Linthicum, Pittman, Campuzano and Murray were served and have answered Plaintiff's complaint. They move for summary judgment arguing Plaintiff has not exhausted his administrative remedies, they were not personally involved in the alleged constitutional violation, they are entitled to qualified immunity and they are entitled to Eleventh Amendment immunity.

For the first time in his response, Plaintiff indicates the nurses at the Travis State Jail had denied his medication due to a policy that was no longer in existence. Plaintiff responds Issak was responsible as a supervisor, because she did not make sure the old policy was not being used concerning non-mandatory medication. Similarly, he alleges Owens failed to "make sure his subordinates under his supervisory knew the old policy was done away with." Plaintiff contends Campuzano and Pittman were responsible for ensuring their employees adhered to current lockdown procedures. Plaintiff further contends Linthicum, as Director of the TDCJ Health Services Division is responsible for ensuring that all inmates get their medications during unit lockdowns. Plaintiff admits qualified immunity is available to officials sued in their personal capacities. However, he argues he named as a defendant the University of Texas Medical Branch, which has no qualified immunity. Plaintiff also repeats he did not receive his medication from December 19, 2005 to December 24, 2005. He also indicates the length of the other lockdowns in 2005 were for a week each.

## II. ANALYSIS

A.     Standard of Review Under Fed. R. Civ. P. 56(c)

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996); Int'l Shortstop, Inc. v. Rally Inc., 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S. Ct. 936 (1992). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. Ray v. Tandem Computers, Inc., 63 F.3d 429, 433 (5th Cir. 1995); Fed. R. Civ. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. Id. at 322, 106 S. Ct. at 2552. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. Id. at 323-24, 106 S. Ct. at 2554. At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. at 2553. The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations. Fed. R. Civ. P. 56(e); Tubacex v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. The Fifth Circuit has concluded "[t]he standard of review is not merely

4

whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." James v. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) (citing Matsushita, 475 U.S. at 586, 106 S. Ct. 1356)). To the extent facts are undisputed, a Court may resolve the case as a matter of law. Blackwell v. Barton, 34 F.3d 298, 301 (5th Cir. 1994).

    B.    Exhaustion of Administrative Remedies

Prisoners are required to exhaust prison grievance procedures before filing suit in federal court. 42 U.S.C. § 1997e(a); Jones v. Bock, ---U.S. ----, ----, 127 S. Ct. 910, 914 (2007); Woodford v. Ngo, --- U.S. ----, ----, 126 S. Ct. 2378, 2382 (2006). The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. Booth v. Churner, 532 U.S. 731, 734, 121 S. Ct. 1819, (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).

The Texas Department of Criminal Justice ("TDCJ") provides a two-step procedure for presenting administrative grievances.[2] A prisoner must pursue his grievance at both the Step 1 and

---

[2] Step 1 requires the prisoner to submit an administrative grievance at the institutional level. Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (citing to TDCJ Administrative Directive No. AD-03.82 (rev.1), Policy, ¶ IV (Jan. 31, 1997)). After an investigation, the unit grievance investigator prepares a report and makes a recommendation to the final decision maker, which may be the warden, assistant warden, facility administrator, assistant facility administrator, or health administrator. Id. Step 2 permits the prisoner to submit an appeal to the division grievance investigator with the Correctional Institutions Division of the TDCJ. Id. After an investigation, the departmental grievance investigator prepares a report and makes a recommendation to the final decision maker for Step 2 of the process, which is the director, deputy director, regional director or assistant director. Id.

Step 2 levels in order to exhaust his administrative remedies. Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004) (citing Wright, 260 F.3d at 358). The purpose of the exhaustion requirement is to alert prison officials of problems so that the prison has a chance to address the claims before they reach federal court. Woodford, 126 S. Ct. at 2388. As acknowledged by the Supreme Court, Congress intended the administrative process to "filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding." Booth, 532 U.S. at 737.

Defendants contend Plaintiff failed to exhaust his administrative remedies because he did not grieve specifically against any of the named defendants. The Supreme Court recently held that the Prison Litigation Reform Act (PLRA) contains no requirement concerning who must be named in a prison grievance in order to exhaust properly the prison grievance system. Jones v. Bock, 127 S. Ct. 910, 922-23 (2007). Rather, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. at 923. Defendants make no argument, and there is no indication in the record, that the Texas grievance procedures require the prisoner to specifically name a particular official.

In this case Plaintiff submitted a Step 1 grievance on December 20, 2005, indicating he was not given his medication for back pain and arthritis on December 19 and 20, 2005, due to the prison's lockdown. He requested proper medical care from the medical division.

On January 13, 2006, Assistant Warden Peralta responded that Plaintiff grievance was referred to the medical department. According to Peralta, the medical department advised that Plaintiff's medication is ordered "KOP" (keep on person). He further advised during a lockdown Plaintiff would not be provided Indocin, his arthritis/pain medication, as that medication was not

6

considered a critical medication during lockdown status. Dissatisfied with the response, Plaintiff submitted his Step 2 grievance on January 17, 2006. Guy Smith responded on January 31, 2006, that Plaintiff failed to specify the name of the medication he was allegedly denied on December 19 and 20, 2005. Smith ignores that Assistant Warden Peralta specifically named the medication in his response to Plaintiff's Step 1 grievance.

The records reflect Plaintiff exhausted his administrative remedies with respect to being denied medication on December 19 and 20, 2005. There is no evidence that he submitted a grievance regarding the denial of medication during the lockdowns earlier in the year. Accordingly, Plaintiff's claims with regard to the denial of medication in March and June, 2005, should be dismissed for failure to exhaust administrative remedies. Plaintiff's claim that he was denied pain medication during the December 2005 lockdown will be discussed below.

    C.    <u>Eleventh Amendment Immunity</u>

Being sued in their official capacities for monetary damages, Defendants are immune from suit under the Eleventh Amendment because such an action is the same as a suit against the sovereign. <u>Pennhurst State School Hosp. v. Halderman</u>, 465 U.S. 89, 104 S. Ct. 900 (1984). The University of Texas Medical Branch and the Texas Department of Criminal Justice is also immune from suit. <u>See</u> <u>University of Texas Medical Branch at Galveston v. Mullins</u>, 57 S.W.3d 653, 657 (Tex. App.2001) ("It is undisputed that UTMB is a governmental entity entitled to assert sovereign immunity."). The Eleventh Amendment generally divests federal courts of jurisdiction to entertain suits directed against states. <u>Port Auth. Trans-Hudson v. Feeney</u>, 495 U.S. 299, 304, 110 S. Ct. 1868, 1871 (1990). The Eleventh Amendment may not be evaded by suing state agencies or state

employees in their official capacity because such an indirect pleading remains in essence a claim upon the state treasury. Green v. State Bar of Texas, 27 F.3d 1083,1087 (1994).

    D.    Qualified Immunity

With respect to Plaintiff's claims brought against them in their individual capacities Defendants Issak, Linthicum, Pittman, Campuzano and Murray assert their entitlement to qualified immunity. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). Immunity in this sense means immunity from suit, not merely from liability. Jackson v. City of Beaumont, 958 F.2d 616 (5th Cir. 1992). "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995). In general, "qualified immunity represents the norm." Id. With respect to a ruling on qualified immunity, the first question a court should address is "whether the plaintiff has alleged a violation of a clearly established constitutional right." Siegert v. Gilley, 500 U.S. 226, 231, 111 S. Ct. 1789 (1991); Hale v. Townley, 45 F.3d 914, 917 (5th Cir. 1995). If the Plaintiff has alleged a constitutional violation, the court must then determine whether the defendant's conduct was objectively reasonable under legal principles as they existed at the time of the defendant's acts or omissions. Hale, 45 F.3d at 917, citing Brewer v. Wilkinson, 3 F.3d 816, 820 (5th Cir. 1993), cert. denied, 510 U.S. 1123, 114 S. Ct. 1081 (1994); Spann v. Rainey, 987 F.2d 1110, 1114 (5th Cir. 1993).

Claims of qualified immunity require a two step analysis. As a threshold matter, the court must consider whether the facts alleged, taken in the light most favorable to the party asserting the

injury, show that the official's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001); Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001). If the allegations do not establish the violation of a constitutional right, the official is entitled to qualified immunity. Saucier, 533 U.S. at 201, 121 S. Ct. at 2156. If the allegations could make out a constitutional violation, the court must ask whether the right was clearly established – that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202, 121 S. Ct. at 2156. If an official makes a reasonable mistake as to what the law requires, the officer is entitled to immunity. Id. at 205, 121 S. Ct. at 2158.

  E. Medical Care

Construing Plaintiff's exhausted claim liberally, as the Court must, Plaintiff alleges nurses at the Travis State Jail failed to provide him with his arthritis/pain medication during the December 2005 lockdown, because they believed prison policy prohibited them from dispensing the medication, which was considered non-mandatory. According to Plaintiff, the policy had been changed to allow inmates to receive their medications despite a lockdown, but the nurses had not been notified of the change. He holds responsible Defendant Issak, the supervisor of the University of Texas Medical Branch at the Travis State Jail; Dr. L. Linthicum, TDCJ Medical Services Director; Warden Pittman of the Travis State Jail; Gilbert Campuzano, Regional Director of TDCJ; and Owen J. Murray, Medical Director of the University of Texas Medical Branch. He contends these defendants were responsible for ensuring their employees followed the right policy with regard to dispensing of medication during lockdowns.

Prison officials violate the constitutional prohibition against cruel and unusual punishment when they demonstrate deliberate indifference to a prisoner's serious medical needs. Wilson v.

Seiter, 501 U.S. 294, 297 (1991).  A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  A supervisory official, such as the defendants in the instant case, "may be held liable if there exists either (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987).

In this case Plaintiff fails to allege any of the defendants knew that the nurses at the Travis State Jail were not following the proper policy regarding the dispensation of medication during lockdowns.  At most, Plaintiff has alleged the defendants were negligent for failing to ensure their employees followed current policies.  However, negligence is not sufficient to state a constitutional violation.

### III.  RECOMMENDATION

The undersigned recommends that the District Court **GRANT** Defendants' Motion for Summary Judgment**, DISMISS WITHOUT PREJUDICE** for failure to exhaust administrative remedies Plaintiff's claims regarding the denial of medication in March and June 2005, **DISMISS WITHOUT PREJUDICE** for want of jurisdiction Plaintiff's claims brought against the University of Texas Medical Branch, the Texas Department of Criminal Justice and Defendants Issak, Linthicum, Pittman, Campuzano, and Murray in their official capacities, and **DISMISS WITH PREJUDICE** Plaintiff's claims brought against Defendants Issak, Linthicum, Pittman, Campuzano, and Murray in their individual capacities as these defendants are entitled to qualified immunity.

## IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415, 1428-29 (5th Cir. *en banc*, 1996).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 30th day of May, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE